FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 FEB 11 PM 12:00

MARGARET BOTKINS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal No. 19-CR-171-ABJ |
| ) | |
| MATTHEW TY BARRUS, ) | |
| a/k/a Ty Barrus, ) | |
| ) | |
| GREGORY J. BENNETT, ) | |
| a/k/a Greg Bennett, ) | |
| ) | |
| and, ) | |
| ) | |
| DEVIN E. DUTSON, ) | |
| ) | |
| Defendants. ) | |

## ORDER CONTINUING TRIAL

This matter came before the court on Defendants Barrus, Bennett, and Duston's joint motion to continue the trial. The government opposes the requested continuance. The court hereby FINDS and ORDERS as follows:

### *RELEVANT BACKGROUND*

1.　The grand jury returned an eleven (11) count *Indictment* filed September 26, 2019. (ECF No. 1). It charged these defendants with conspiring to commit healthcare fraud, in violation of 18 U.S.C. §§ 1347 and 1349, health care fraud, in violation of 18 U.S.C. § 1347, and engaging in a monetary transaction involving criminally-derived property, in violation of 18 U.S.C § 1957. *Id*. On September 30, 2019, Defendants Barrus and Dutson appeared initially before the Court and each was released on bond. (ECF Nos. 15 and 18). Following, on October 2, 2019, Defendant

Bennett appeared initially before the Court, and similarly was ordered to remain out of custody on bond. (ECF No. 37).

2.  On October 2, 2019, the United States moved for an order declaring the case complex. (ECF No. 34). In its motion, the United States averred:

> [T]he government has charged three defendants with 11 fraud and money-laundering crimes resulting in the theft of approximately $8.6 million from Wyoming Medicaid over at least 6 ½ years from April 2009 through December 2015.
>
> ***
>
> The investigation gathered voluminous records (including patient records, treatment logs, email messages, and financial records) and numerous interviews (many of which were recorded). The government expects many of these individuals will be called to testify at trial.
>
> The government currently estimates that discovery includes over 110,000 documents, 30 interview reports, and 19 recorded interviews. This takes up at least 44 gigabytes of computer storage space.
>
> ***
>
> In addition to the volume of evidence and the number of likely witnesses, understanding the charged scheme requires an understanding of (among other things) services provided to individuals with diagnosed substance-abuse disorders, substance-abuse and mental health service provider taxonomies and licensure, substance-abuse treatment services–and how Wyoming Medicaid rules and regulations apply to all of the above. The interactions of these different specialized areas of expertise make this case unusual and significantly increase the complexity of trial preparations.

(ECF No. 34, 3–5).

3.  The Court held a hearing on November 4, 2019, to address the government's request to declare the case complex and set a trial date. (ECF No. 63). The Court set trial to begin on June 1, 2020, and found that trial would last an estimated 2-3 weeks. *Id.* It found "the ends of justice are served by setting the trial outside the 70-day time period (in the Speedy Trial Act) and (further found) the resulting delay excludable under the Act." *Id.* at 3.

4. On March 31, 2020, Defendants Bennett and Barrus moved the Court to continue trial. (ECF No. 77). The defendants' request was based the recent acquisition of "approximately thirty (30) bankers boxes full of documents and eight (8) computers" that defense counsel were working to produce to the government and all defendants. *Id.* at 3. That continuance request also was based on the then-emerging "nationwide outbreak of the Coronavirus Disease (COVID-19)," declared a National Emergency on March 13, 2020. *Id.* at 3–4. Defendant Devin Dutson joined in the continuance request. (ECF No. 81). The government also joined in the continuance request, asking "that a hearing be scheduled to determine excludable delay and schedule an appropriate trial date" and that the "required ends-of- justice findings be made at the hearing." (ECF No. 80, 4–5).

5. The Court held a hearing on the motion on April 24, 2020. (ECF No. 85). It found,

> [A]n ends of justice continuance is necessary in response to the recent outbreak of Coronavirus Disease 2019 (COVID-19) across the United States, which has resulted in significant community impacts such as school and business closures. The President of the United States declared a national emergency on March 13, 2020. The World Public Health Organization declared COVID-19 to be a global pandemic . . . Among other things, the Centers for Disease Control and Prevention (CDC) recommends people distance themselves from others. Given the severity of the risk posed to the public, the Court finds continuing trial is in the interest of justice to avoid subjecting potential jurors, the parties, and Court personnel to the virus. The ends of justice are served because the continuance outweighs the best interests of the public and Defendants' right to a speedy trial.

(ECF No. 86, 2–3) (citations omitted). The Court found additional reasons warranting the grant of a continuance:

> The case is complex. Its complexity grew with the discovery of numerous bankers' boxes, which defense counsel feels merits analysis . . . At the same time, the discovery the Government has provided to the Defendants is very substantial and will require substantial time to review. Additionally, defense counsel has a need to contact witnesses, which is complicated by the COVID-19 pandemic. Counsel, investigators, the Court and potential jurors are subjected to limitations by the COVID-19 pandemic.

*Id.* at 3. The Court continued the trial start date to June 7, 2021. This is the current trial setting. All Defendants remain on pretrial release, subject to and fully compliant with those bond conditions imposed by the Court.

### THE SPEEDY TRIAL ACT

The Speedy Trial Act (18 U.S.C. §§ 3161–3174) imposes various deadlines in connection with federal criminal cases. The Act generally requires trial to begin within seventy days of the filing of an information or the defendant's initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). Periods of time specified in 18 U.S.C. § 3161(h) are "excluded in computing the time within which . . . the trial of any such offense must commence." Specifically excluded is

> Any period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). In determining whether to grant an ends-of-justice continuance, the Court shall consider, among others, the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

*** 

> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B). As a general matter, the Court has discretion to order an ends-of-justice continuance during an emergency. *See Furlow v. United States*, 644 F.2d 764, 767–69 (9th Cir. 1981) (affirming an ends-of-justice continuance occasioned by the eruption of Mount St. Helens in 1980). Numerous courts continue to grant ends-of-justice continuances related to the COVID-19 pandemic.[1]

The Tenth Circuit summarized the procedural requirements for an ends-of-justice continuance as follows:

> Before granting an ends-of-justice continuance, the district court must consider several factors. *See* 18 U.S.C. § 3161(h)(7)(B) (listing factors). Further, the court must make express findings on the record stating its reasons for granting a continuance. But while the record must clearly establish the district court considered the proper factors at the time it granted the continuance, the district court need not articulate facts which are obvious and set forth in the motion for the continuance itself.

*United States v. Zar*, 790 F.3d 1036, 1044 (10th Cir. 2015) (citations and quotation marks omitted). *See also, e.g., United States v. Loughrin*, 710 F.3d 1111, 1119 (10th Cir. 2013).

### EXCLUDABLE DELAY FINDINGS

**a.     The COVID-19 pandemic probably will remain ongoing for months to come.**

The court is cognizant of the ongoing COVID-19 pandemic, and it takes judicial notice of official information related to COVID-19. *See, e.g., Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 1978382, at *2 & n.4 (N.D. Miss. Apr. 24, 2020). Moreover, Defendants detailed background information regarding COVID-19, both nationally and in Wyoming in their motion to continue trial. (ECF No. 98 at 6–8). As of January 25, 2021, the United States has recorded

---

[1] *United States v. Begay*, 4:20-cr-00115-DN-PK (D. Utah Jan. 25, 2021); *United States v. Miller*, 2:20-00092 (S.D.W.V. Jan. 22, 2021); *United States v Ibarra-Valle et. al.*, CR20-197-RAJ (W.D. Wash. Jan. 22, 2021), and *United States v. Mitchell et. al.*, 2:19-cr-00026-ABJ (D. Wyo. Dec. 11, 2020).

C

25,298,254 total COVID-19 cases, and 421,236 COVID-19 deaths.[2] Wyoming continues to experience over 25 daily cases per 100,000 residents, indicating, "unchecked community spread."[3] This unchecked community spread is evidenced by the 2,410 laboratory-confirmed cases in Wyoming within the past two weeks.[4] In Laramie County, Wyoming, where trial is scheduled to occur, in the past two-week period, laboratory tests confirmed 322 new COVID-19 cases.[5]

Only a small number of Wyoming citizens have received a COVID-19 vaccination. To date, in Wyoming, 71,725 doses of the vaccines have been distributed, yet a mere 847 individuals have received the requisite two doses.[6] The current Administration believes that its efforts at increasing vaccine supply and distribution, if successful, will yield "enough vaccine to fully vaccinate 300 [million] Americans by the end of summer, beginning of the fall."[7]

---

[2] Stephanie Adeline, Connie Hanzhang Jin, Alyson Hurt, Thomas Wilburn, Daniel Wood & Ruth Talbot, *How Sever Is Your State's Coronavirus Outbreak?*, NAT'L PUB. RAIDO (Jan. 26, 2021, 12:22 p.m.) https://www.npr.org/sections/health-shots/2020/09/01/816707182/map-tracking-the-spread-of-the-coronavirus-in-the-u-s.

[3] *Id.* (citing *Ctr. for Sys. Sci. and Eng'g at Johns Hopkins Univ., Census Bureau 2019 Population Estimates, 2010 Census (U.S. territories)*) (noting "Daily cases are a 7-day average to smooth out day-to-day variations in the data. Risk levels are based on a scale developed by the Harvard Global Health Institute and a collaboration of top scientists at institutions around the country").

[4] COVID-19 State and Cnty. Dashboards, Wyo. Dep't Health (Jan. 26, 2021, 12:35 p.m.), https://health.wyo.gov/publichealth/infectious-disease-epidemiology-unit/disease/novel-coronavirus/covid-19-state-and-county-dashboards/.

[5] *Id.*

[6] *Id.*

[7] Joseph R. Biden, President, U.S., Remarks by President Biden on the Fight to Contain the COVID-19 Pandemic (Jan. 26, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/01/26/remarks-by-president-biden-on-the-fight-to-contain-the-covid-19-pandemic/.

b.     **As matters stand, the trial in this case will be lengthy.**

As matters currently stand, this trial will be lengthy. "[T]he government has charged three defendants with 11 fraud and money-laundering crimes resulting in the theft of approximately $8.6 million from Wyoming Medicaid over at least 6 ½ years from April 2009 through December 2015." (ECF No. 34, 3). According to the government,

> In addition to the volume of evidence and the number of likely witnesses, understanding the charged scheme requires an understanding of (among other things) services provided to individuals with diagnosed substance-abuse disorders, substance-abuse and mental health service provider taxonomies and licensure, substance-abuse treatment services–and how Wyoming Medicaid rules and regulations apply to all of the above. The interactions of these different specialized areas of expertise make this case unusual and significantly increase the complexity of trial preparations.

(ECF No. 34, 4–5). As this court previously found (and finds again), given the volume of the evidence and complexity of the issues, this case is unusual and complex. (ECF No. 64, 3). To date, all three Defendants remain set for trial, and trial is estimated to last 2-3 weeks. (ECF No. 63). To the extent one or more Defendants presents his own case, it may last longer.

c.     **COVID-19 is impairing the Defendants' ability to prepare for trial.**

Based on the representations in their motion, COVID-19 is materially impacting all three Defendants' ability to prepare for trial. Members of the defense team(s) have been unable to spend any real length of time in close proximity, examining documents, reviewing potential exhibits, discussing strategy, locating and interviewing witnesses, and so forth. They have lacked the ability to effectively engage in discovery review together with their respective clients. Collaboration and discussion regarding discovery and investigation materials instead is constrained by phone calls and email exchanges. Any collaborative discovery review cannot occur in person without significantly increasing everyone's risk of exposure to COVID-19.

Furthermore, no defense counsel or investigators have been able to conduct meaningful witness interviews. Travelling to meet with witnesses necessarily would increase the risk of exposure to COVID-19, both for the traveling members of the defense teams and for the witnesses themselves. Some witnesses might decline to meet at all, or reasonably fear for their own health and safety with an in-person defense interview, due to the COVID-19 pandemic. Simply placing phone calls or sending emails to potentially adverse, uncooperative, or even reluctant witnesses, in the hope they might respond, simply is ineffective, insufficient, and would not fulfill counsel's Sixth Amendment duties and obligations to their clients.

      d.    **Holding trial in June of 2021 probably would expose various trial participants to COVID-19.**

The court is especially concerned that holding a trial in June of 2021 would risk exposing various participants to COVID-19. Once again, the court takes judicial notice of the health-related risks associated with COVID-19, acknowledging that these risks are not entirely understood by experts. Fortunately, most people recover from COVID-19 without serious illness. However, according to the CDC, a person's risk of server illness from COVID-19 increases with age, with eighty percent of COVID-19 fatalities involving adults at least 65 years old.[8] People with certain health conditions also face an increased risk of severe illness from COVID-19.[9] And, while vaccine production, administration, and efficacy continue to increase, all previously recommended preventative health practices remain in place.

---

[8] Ctrs. for Disease Control & Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[9] Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

> Not enough information is currently available to say if or when CDC will stop recommending that people wear masks and avoid close contact with others to help prevent the spread of the virus that causes COVID-19.
>
> Experts need to understand more about the protection that COVID-19 vaccines provide in real-world conditions before making that decision. Other factors, including how many people get vaccinated and how the virus is spreading in communities, will also affect this decision. We also don't yet know whether getting a COVID-19 vaccine will prevent you from spreading the virus that causes COVID-19 to other people, even if you don't get sick yourself.[10]

In this case, absent a continuance, trial and witness preparation would tend to increase the risk of exposure for the defense team(s) and any witness who meets with them for trial preparation. The risks entailed by the trial itself would be more profound still. The trial itself would last for weeks, with witnesses passing in and out of the courtroom. This court would take all reasonably available precautions to reduce the risk of exposure. Nevertheless, based on currently available information, it seems reasonably likely that one or more trial participants would be exposed to COVID-19 and test positive in connection with the trial process, in spite of this court's precautions.

This court is particularly sensitive to the impact the June 2021 trial might have had on members of the venire and the jury. For some members of the venire, appearing at the courthouse would have required them to travel hundreds of miles, possibly spending one or more nights in hotels. This probably would have increased their relative risk of exposure to COVID-19, apart from the risks inherent in the *voir dire* process. For many members of the jury, service in this case would require spending weeks in hotel rooms and potentially traveling to and from home over the various weekends, once again increasing their risk. In this court's experience, there is a high likelihood that multiple members of the jury will have one or more age- or health-related risk factors for severe illness from COVID-19. Moreover, this court is aware that many small

---

[10] Ctrs. for Disease Prevention and Control, *Frequently Asked Questions About COVID-19 Vaccination*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html#mask.

businesses have been adversely affected by the pandemic. To the extent members of the jury may be owners or employees of small businesses, requiring them to be away from work for several weeks during trial might be appreciably more burdensome during this pandemic than during ordinary times.

      e.    **Beginning trial in June of 2021 would entail an appreciable risk of one or more delays and continuances due to positive tests or exposures.**

Apart from its potential risk to their health, the likelihood of exposing various trial participants to COVID-19 carries a practical implication for the trial itself: it seems very unlikely that a trial beginning in June 2021 would continue to a successful conclusion without repeated delays. As discussed above, the trial process would create a strong possibility of multiple positive tests among its participants. Of course, not every positive test would necessarily delay the trial. But many would. For example, a positive test among the jurors, prosecution team, or any of the respective defense teams would likely require continuing the trial to quarantine the infected person and isolate the pertinent group or groups. In the meantime, other trial participants would be traveling, returning home, returning to work, and potentially testing positive for COVID-19 themselves. The court finds there is an appreciable risk that, if the trial were to begin in June 2021, the result might be a piecemeal trial interrupted by various delays and continuances. Such delays might impair the truth-seeking process.

      f.    **Based on these circumstances, the ends of justice outweigh the best interest of the public and the Defendants in a speedy trial.**

For the reasons discussed above, the court finds "the ends of justice served by [continuing this trial] outweigh the best interest of the public and the defendant[s] in a speedy trial," as 18 U.S.C. § 3161(h)(7)(A) requires. To be sure, there is a reason to proceed to trial as soon as reasonably possible. There has already been lengthy (although justified) pretrial delay in this case.

However, this consideration does not outweigh the overwhelming justifications to continue this case because of COVID-19. Quite simply, neither the public's interest nor the Defendants' interests would be served by starting a trial in June 2021, without adequate preparation, at the risk of severe illness to the participants, and with a reasonable likelihood of further delays during the trial. These considerations justify a further continuance.[11]

Therefore, the trial is hereby VACATED and CONTINUED until November 1, 2021, at 1:30 p.m. In selecting this date, the court considered various factors, including the potential availability of COVID-19 vaccines, the need for time to assess the effectiveness of said vaccines, and the need for time to prepare for trial. The court is concerned that an earlier trial date might occur before all participants have had the opportunity to be vaccinated (if they so choose), before the length of the immune response occasioned by said vaccination is known, or before the parties have had time for adequate trial preparation. Accordingly, the court hereby finds a continuance until November 1, 2021 is justified under 18 U.S.C. § 3161(h)(7).

g. **Excludable delay generated by the "ends of justice" continuance is applied to the speedy trial calculation of each Defendant.**

Finally, under 18 U.S.C. § 3161(h)(6), the court finds it is reasonable to apply the excludable delay discussed above to the speedy trial calculation of each Defendant. To date, all three Defendants are free on bond. In their joint motion, counsel for each Defendant requested this continuance. The court is unaware of any pending attempt to sever any Defendant from the joint trial.

## CONCLUSION

---

[11] Under 18 U.S.C. § 3771(a)(7), crime victims have "[t]he right to proceedings free from unreasonable delay." But here, a further continuance based on COVID-19 would be reasonable. Indeed, it would tend to benefit any testifying victims by reducing their risk of exposure to COVID-19.

For the reasons discussed above, the court hereby FINDS the ends of justice support continuing the Defendants' joint trial from June 7, 2021 to November 1, 2021. The court hereby ORDERS that the intervening time is excluded from each Defendant's speedy-trial calculation.

SO ORDERED this 11th day of February, 2021.

HONORABLE ALAN B. JOHNSON
UNITED STATES DISTRICT COURT JUDGE